UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                                    Chapter 11

GOLIATH VENTURES INC. (FL),                    Case No. 26-13174-RAM
GOLIATH VENTURES INC. (WY),                    Case No. 26-13176-RAM
                                                          Jointly Administered

        Debtors.

_____/

## DEBTORS' MOTION FOR APPROVAL OF COMPROMISE AND SETTLEMENT WITH THE UNITED STATES OF AMERICA: THE COORDINATION AGREEMENT

Goliath Ventures Inc., a Florida corporation f/d/b/a Gen-Z Venture Firm, Inc. and Goliath Ventures Inc., a Wyoming corporation (together, "***Debtors***"), pursuant to F.R.B.P. 9019 and L.R. 9013-1(D), file this motion ("***Motion***") to approve a coordination agreement ("***Coordination Agreement***") with the United States of America. In support, the Debtors state as follows.

## I.    Background

1.    On March 3, 2026 and March 5, 2026, the Circuit Court for the 17th Judicial Circuit in and for Broward County, Florida entered orders appointing Michael S. Budwick as the receiver ("***Receiver***") of the Debtors.

2.    On March 16, 2026 ("***Petition Date***"), the Receiver caused the Debtors to file voluntary petitions under Chapter 11 of the U.S. Bankruptcy Code in the U.S. Bankruptcy Court S.D. of Florida ("***Bankruptcy Court***") commencing the above captioned bankruptcy cases ("***Bankruptcy Cases***").

3.    On March 20, 2026, the Bankruptcy Court entered its Interim Order Granting Receiver's Motion to Excuse Compliance with 11 U.S.C. § 543 [Dkt. No. 31] ("***Interim Order***"), which, on an interim basis, excused the Receiver from compliance with 11 U.S.C. §§ 543(a)-(b).

MELAND | BUDWICK
3200 SOUTHEAST FINANCIAL CENTER | 200 SOUTH BISCAYNE BOULEVARD | MIAMI, FL 33131 | T 305-358-6363

On April 22, 2026, the Bankruptcy Court conducted a hearing and excused the Receiver from compliance and turnover for 120 further days.

4.      On April 14, 2026, the Debtors moved to extend and reset the claims bar date from May 26, 2026 through and including September 30, 3036. [Dkt. No. 67]. On April 22, 2026, the Bankruptcy Court conducted a hearing and granted the Debtors' motion.

5.      The Receiver, both prepetition and post-petition on behalf of the Debtors, has investigated and is investigating the Debtors' assets (including potential estate causes of action), liabilities, and financial affairs.

6.      The Receiver (prepetition and post-petition on behalf of the Debtors) has communicated with the United States of America regarding a number of issues including: (i) the United States' seizure of assets held by the Debtors, Christopher Delgado (the Debtors' former senior insider) and entities affiliated with Mr. Delgado; (ii) the United States' possession of the Debtors' books and records along with the Receiver's need to obtain a duplicate copy; (iii) the Debtors' pre-petition corporate attorney-client privilege; (iv) the estates' Chapter 5 claims; and (v) the desire to avoid duplication of efforts and maximize efficiency.

## II.      The United States' Criminal Prosecution

7.      On February 20, 2026, the United States filed a criminal complaint ("***Criminal Complaint***") against Mr. Delgado alleging that he, and potentially others, perpetrated a Ponzi scheme through the Debtors. *See U.S.A. v. Christopher Alexander Delgado*, Case No. 6:26-mj-1240 (M.D. Fla.) ("***Criminal Case***").[1]

8.      The United States attached to the Criminal Complaint a probable cause affidavit sworn to by federal law enforcement.

---

[1] The Criminal Complaint is attached as Exhibit 2 to Dkt. No. 20; *see also* Receivership Orders, attached as Composite Exhibit 1 to Dkt No. 20.

MELAND | BUDWICK
3200 SOUTHEAST FINANCIAL CENTER | 200 SOUTH BISCAYNE BOULEVARD | MIAMI, FL 33131 | T 305-358-6363

9.      As reflected in the Criminal Case and otherwise, starting before the receivership, the United States engaged in efforts to take possession, seize and liquidate various assets held in the name of Mr. Delgado, certain of his affiliates, and the Debtors, including vehicles, jewelry, digital assets, and fiat currency.[2] Most of the assets are located domestically with some held abroad. The docket further reflects that Mr. Delgado appears to be generally cooperative with the United States in this process, and that he is not currently in custody.

### III.    Coordination Agreements in Ponzi scheme cases, Generally

10.     "In a Ponzi scheme context, the bankruptcy trustee, court-appointed receiver, and a government entity may enter into coordination agreements to facilitate cooperation among multiple entities where each has a role related to judicial resolution of the Ponzi scheme. Coordination among these parties is necessary in the Ponzi context because violations of both criminal and civil laws have occurred with the additional overlay of bankruptcy laws."[3]

11.     "The ultimate goal of coordination is to minimize the potential for expensive litigation. In every possible instance, the absence of coordination among the various parties in these cases will diminish the recovery of the victims and creditors of this fraud."[4]

12.     Indeed, coordination agreements are common between the United States and a bankruptcy estate in the fallout of very large Ponzi schemes, including in (1) the Marc Dreier Ponzi scheme; (2) the Tom Petters Ponzi scheme; and (3) the Bernie Madoff Ponzi scheme.[5]

13.     Bankruptcy Judge Steven W. Rhodes explained:

---

[2] *See generally* Criminal Case.
[3] Sharon Z. Weiss, Natalie B. Daghbandan, Overcoming Administrative, Procedural and Evidentiary Hurdles in Ponzi Scheme Litigation, 42 Golden Gate U. L. Rev. 641, 654 (2012) ("*Weiss Article*"); *see also* Hon. Steven W. Rhodes, Coordination Agreements in Parallel Forfeiture and Bankruptcy Proceedings, Bus. L. Today, June 2012, pg. 1 ("*J. Rhodes Article*").
[4] Weiss Article, pg. 653 (quotations omitted); *see also* J. Rhodes Article, pgs. 1-2.
[5] Weiss Article, pg. 654; J. Rhodes Article, pg. 2-4.

MELAND | BUDWICK
3200 SOUTHEAST FINANCIAL CENTER | 200 SOUTH BISCAYNE BOULEVARD | MIAMI, FL 33131 | T 305-358-6363

The competition between forfeiture and bankruptcy in the process of compensating the victims of a Ponzi scheme is not in the better interest of Ponzi scheme victims. It delays and reduces their recoveries. The willingness of the DOJ and bankruptcy trustees to address this problem by negotiating coordination agreements is therefore a welcome development.[6]

14. Here, as discussed further below, the Debtors and the United States have entered into the Coordination Agreement for this laudable purpose.

## IV. Communications and Negotiations with the United States

15. The Receiver, promptly following his appointment, contacted the United States regarding the receivership. The parties then embarked on a series of ongoing communications over weeks, with the Receiver expressing his goal of coordinating with the United States to, among other things, further the successful administration of the receivership (and later, this bankruptcy) for the benefit of victims and other creditors, while not impeding the United States' pursuit of justice.

16. The issues discussed included (i) the ongoing criminal investigation; (ii) the Debtors' books and records, and server (obtained pre-receivership by the United States); (iii) the parties' potentially competing claims to the assets of the Debtors, Mr. Delgado and his affiliated entities; (iv) the process to review and liquidate a claims body of potentially ~1,500 creditors; (v) the estate's Chapter 5 claims; (vi) the Debtors' pre-petition attorney-client privilege; and (vii) the non-duplication of efforts.

## V. The Coordination Agreement

17. Following discussions and negotiations, the parties reached a compromise and settlement in the form of the Coordination Agreement. The Debtors submit that the Coordination Agreement is fair, reasonable, and in the best interests of the estates and the creditor body. A

---

[6] J. Rhodes Article, pg. 4.

MELAND | BUDWICK
3200 SOUTHEAST FINANCIAL CENTER | 200 SOUTH BISCAYNE BOULEVARD | MIAMI, FL 33131 | T 305-358-6363

copy of the Coordination Agreement is attached as **Exhibit A**.

18.    The key aspects of the Coordination Agreement, as more fully set forth in the agreement itself, are:

- The United States' will not seek to seize or forfeit the Debtors' chapter 5 litigation claims.

- The Debtors' limited deferral of certain actions, such as oral Rule 2004 examinations and the commencement of adversary litigation, through October 30, 2026, with the United States to consent to those examinations or litigation that will not impair the pending criminal investigation ("*Deferral*").

- The Debtors will not challenge the seizure or forfeiture by the United States of assets held by the Debtors, Mr. Delgado, and his affiliates or purchased by Mr. Delgado and titled to his associates or family members. The United States will periodically inform the Debtors of the specific assets seized and the asserted owner of such assets.

- The United States will assume the responsibility for seizing digital assets of Mr. Delgado or the Debtors.

- The United States will seek approval to distribute the proceeds of forfeited assets to victims through the bankruptcy process.

- The Debtors and the United States will work together to compile the victim list with creditor claims to be liquidated by this Court.

- The Debtors will waive their corporate attorney-client privilege with their pre-petition attorneys.

- Other items to increase efficiency and prevent duplication of efforts.

## VI.    Relief Requested – Approval of the Coordination Agreement

19.    The Debtors seek an Order approving the Coordination Agreement.

20.    "It is generally recognized that the law favors compromise of disputes over litigation for litigation sake."[7] F.R.B.P. 9019(a) grants the Bankruptcy Court the power to

---

[7] *In re Bicoastal Corp.,* 164 B.R. 1009, 1016 (Bankr. M.D. Fla. 1993).

MELAND | BUDWICK
3200 SOUTHEAST FINANCIAL CENTER | 200 SOUTH BISCAYNE BOULEVARD | MIAMI, FL 33131 | T 305-358-6363

approve settlements.[8] [A]pproval of a settlement in a bankruptcy proceeding is within the sound discretion of the court…".[9]

21.    In analyzing the proposed compromise, the applicable test is whether it "falls below the lowest point in the range of reasonableness."[10]

22.    In assessing whether a proposed compromise should be approved pursuant to F.R.B.P. 9019, a bankruptcy court should consider (i) probability of success in litigation; (ii) difficulties, if any, to be encountered in the matter of collection; (iii) complexity of the litigation and the accompanying expense, inconvenience, and delay; and (iv) the paramount interest of the creditors and a proper deference to their reasonable views.[11]

23.    The Debtors submit the following in support of this Court's consideration in evaluating the Coordination Agreement.

24.    Probability of Success: The Coordination Agreement resolves multiple open issues between the Debtors and the United States. For instance, the Debtors do not possess the Debtors' books and records, and server (although they obtained documents and information from R. 2004 document discovery and other means). The Debtors require these items to fulfill their responsibilities to the estate and the creditor body. While the Debtors could seek turnover under 11 U.S.C. § 542, the United States could potentially oppose this demand pursuant to, among other things, Fed.R.Crim.P. 6(e). While the Debtors believe they would ultimately be successful, given the expense, delay and distraction, it could be a Pyrrhic victory.

25.    Second, the Debtors recognize that the United States' forfeiture efforts – if broadly asserted – could potentially encompass a wide range of assets belonging to the Debtors'

---

[8] *In re Air Safety Int'l, L.C.*, 336 B.R. 843, 852 (S.D. Fla. 2005).
[9] *In re Arrow Air, Inc.,* 85 B.R. 886, 891 (Bankr. S.D. Fla. 1988).
[10] *Air Safety,* 336 B.R. at 852 (quotations omitted).
[11] *In re Justice Oaks II, Ltd.,* 898 F. 2d 1544, 1549 (11th Cir. 1990).

MELAND | BUDWICK
3200 SOUTHEAST FINANCIAL CENTER | 200 SOUTH BISCAYNE BOULEVARD | MIAMI, FL 33131 | T 305-358-6363

estate, including possibly causes of action.[12] The Coordination Agreement favorably resolves this issue by (i) allowing the United States to continue its seizure / forfeiture process of certain assets; and (ii) providing for those proceeds to be distributed to those creditors who qualify as victims under applicable law; while (ii) making clear that the estate's hold sole control and ownership over Chapter 5 avoidance claims. Absent a clear resolution as to control and ownership of Chapter 5 claims, it is conceivable that, in the future, an adversary defendant could seek to dismiss or stay litigation until the issue is resolved, potentially by the Eleventh Circuit. Such a delay would significantly impair the recovery efforts and administration of these Bankruptcy Cases, while resulting in significant expense.

26.     Third, the Debtors appreciate the importance of not impeding the United States' ongoing criminal investigation and pursuit of justice. The Debtors recognize precedent in the S.D. Florida for the United States to secure a stay of discovery to prevent depositions that could impact a pending criminal prosecution.[13] Thus, the Deferral provides the United States with protection from certain potential interference, which the United States would in any event seek and likely obtain if the issue was contested. And the Debtors receive meaningful protections, including that the Deferral: (1) has a deadline of October 30, 2026; (2) is limited in scope; and (3) is subject to non-applicability through consent if the Debtors' request would not impair the criminal investigation. Further, based on the Debtors' good faith discussions with the United States, the Debtors are optimistic that the United States will consent to material oral Rule 2004 examinations that the Debtors intend to take prior to October 30, 2026.

---

[12] 21 U.S.C. § 853; *U.S. v. French*, 822 F.Supp.2d 615, 618-19 & n.3 (E.D. Va. 2011) (citing cases); *see also, generally, In re Rothstein, Rosenfeldt, Adler, P.A.,* 717 F.3d 1205, 1211 (11th Cir. 2013); *In re Drier*, 452 B.R. 391, 414 (Bankr. S.D.N.Y. 2011) ("The thrust of the Coordination Agreement was to avoid the possibility that the Government would seek forfeiture of funds obtained by the Trustee through her avoidance actions.").

[13] *See Foster v. Ruderman*, Adv. Case No. 18-1438 [e.g., Dkt Nos. 132, 147, 152 & 160].

MELAND | BUDWICK
3200 SOUTHEAST FINANCIAL CENTER | 200 SOUTH BISCAYNE BOULEVARD | MIAMI, FL 33131 | T 305-358-6363

27.     Fourth, the United States' agreement to have the proceeds of forfeiture distributed through the bankruptcy claims process is meaningful. A single claims process through the well-established bankruptcy structure – a fair and public-facing mechanism – will promote efficiency and avoid duplication of efforts. The Debtors have agreed, consistent with applicable law, that only creditors that qualify as crime victims will participate. The Debtors will also avoid the time and administrative expense to secure and liquidate certain assets, for which the United States will take responsibility. This will benefit the estate including because (1) the United States began this process pre-receivership; (2) the United States has extensive resources to perform these tasks, particularly related to digital assets; and (3) it eliminates overlapping and potentially competing efforts. The Debtors will focus on the litigation claims which they believe have the potential to be a large source of recovery.

28.     For these reasons and others, the Debtors submit that they have favorably resolved a wide range of key items through the Coordination Agreement in a manner that will promote and protect the interests of creditors.

29.     <u>Difficulties of Collection</u>: This does not apply to the Coordination Agreement.

30.     <u>Complexity, Duration, Expense</u>: The matters consensually resolved by the Debtors and the United States in the Coordination Agreement could have, like in the *Rothstein* Ponzi scheme case,[14] resulted in an enormous amount of time, distraction, and expense to the bankruptcy estate, potentially at the expense of the creditor body. The overarching message from the Coordination Agreement is that the Debtors and the United States, acting in good faith and recognizing the importance of each other's role and responsibilities, can find common ground. As just one example, the Debtors (on the one hand) require a copy of the books and records, and

---

[14] *Rothstein*, 717 F.3d 1205.

MELAND | BUDWICK
3200 SOUTHEAST FINANCIAL CENTER | 200 SOUTH BISCAYNE BOULEVARD | MIAMI, FL 33131 | T 305-358-6363

server, while the United States (on the other hand) requires a waiver of the Debtors' attorney-client privilege, each to facilitate their respective review of documents and evidence.

31.    Indeed, if the Coordination Agreement was not reached and the matters not consensually resolved, it could distract and impede the United States from its pursuit of justice and cause the Debtors and their estates significant costs, time, and distraction. All of this would be to the detriment of creditors including crime victims.

32.    The Coordination Agreement favorably resolves these items while minimizing the professional time and administrative expenses that would accrue during the pendency of these Bankruptcy Cases.

33.    <u>Paramount Interest of Creditors</u>:    Re-stating the quote from Bankruptcy Judge Rhodes in his article on coordination agreements:

> The competition between forfeiture and bankruptcy in the process of compensating the victims of a Ponzi scheme is not in the better interest of Ponzi scheme victims. It delays and reduces their recoveries. The willingness of the DOJ and bankruptcy trustees to address this problem by negotiating coordination agreements is therefore a welcome development.[15]

34.    Here, the Coordination Agreement provides the bankruptcy estates with a roadmap for their efficient interactions with the United States. The compromise eliminates the uncertainty, delay, and expense that would accompany a contest. It is in the overwhelming interest of the creditors, which are largely victims of the alleged Ponzi scheme that Mr. Delgado perpetrated. This is especially true here, where the Debtors and the United States agreed to the Coordination Agreement just over one month post-petition.

---

[15] J. Rhodes Article, pg. 4.

MELAND | BUDWICK
3200 SOUTHEAST FINANCIAL CENTER | 200 SOUTH BISCAYNE BOULEVARD | MIAMI, FL 33131 | T 305-358-6363

35. Accordingly, the Debtors submit that the Coordination Agreement is in the paramount interest of creditors, the best interests of the estate, above the lowest in the range of reasonableness, and, respectfully, should be approved.

**WHEREFORE**, the Debtors respectfully request that this Court enter an Order in substantially the form attached as **Exhibit B**: (i) granting this Motion; (ii) approving the Coordination Agreement; and (iii) granting such further relief as this Court deems just and proper.

Dated: April 27, 2026.

Respectfully Submitted,

*/s/ Solomon B. Genet*
Solomon B. Genet, Esquire
Florida Bar No. 617911
sgenet@melandbudwick.com
Alexander E. Brody, Esquire
Florida Bar No. 1025332
abrody@melandbudwick.com
MELAND BUDWICK, P.A.
200 South Biscayne Blvd., Ste 3200
Miami, Florida 33131
Telephone: (305) 358-6363
Telecopy: (305) 358-1221

*Attorneys for Debtors*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on April 27, 2026, via the Court's Notice of Electronic Filing upon the Registered Users listed on the attached Exhibit 1 and on the Court's Master Service List pursuant to L.R. 2002-1(H)(1) attached as Exhibit 2.

/s/ Solomon B. Genet
Solomon B. Genet, Esquire

MELAND | BUDWICK
3200 SOUTHEAST FINANCIAL CENTER | 200 SOUTH BISCAYNE BOULEVARD | MIAMI, FL 33131 | T 305-358-6363

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:                                           Chapter 11

GOLIATH VENTURES INC. (FL),                      Case No. 26-13174-RAM
GOLIATH VENTURES INC. (WY),                      Case No. 26-13176-RAM
                                                 *Jointly Administered*

         Debtors.

_____/

## COORDINATION AGREEMENT BETWEEN THE UNITED STATES AND GOLIATH VENTURES, INC. (FL) AND GOLIATH VENTURES, INC. (WY)

The United States of America and the Debtors, by and through undersigned counsel, enter into this Coordination Agreement in order to (1) promote the effective administration of these bankruptcy cases; (2) avoid interference with the ongoing federal criminal investigation; (3) maximize the funds available for distribution and criminal restitution to victims of the fraud perpetrated by Christopher Delgado; (4) eliminate competing claims to the Debtors' books, records, and assets; and (5) eliminate the risk of loss or destruction of evidence. *See generally United States v. Christopher Alexander Delgado*, Case No. 6:26-mj-1240 (M.D. Fla.), Doc. 1.

To accomplish these goals, the United States and the Debtors agree as follows:

1.      To avoid potentially impairing the pending criminal investigation, the Debtors agree to defer from taking certain actions in the above captioned bankruptcy cases ("**Bankruptcy Cases**") through October 30, 2026 ("**Period**"). During the Period, the Debtors will only conduct oral Rule 2004 examinations, initiate contested matters or commence any adversary proceedings or litigation before any other court, after the United States consents in writing. The United States may withhold consent if it believes that such actions may impair the

**EXHIBIT A**

criminal investigation. For the avoidance of doubt, this deferral does not include or affect the Debtors' right to enter into settlements or oppose any relief sought by any other party related to the bankruptcy estate.

2.     Prior to the end of the Period, the Debtors and the United States will discuss in good faith if an extension of the deferment period is necessary and appropriate and provide an update to the Bankruptcy Court.

3.     The Debtors have requested that the Bankruptcy Court extend the deadline to file claims from May 26 to September 30, 2026. The Debtors will complete an appropriate Bankruptcy Court supervised claims process in accordance with applicable Eleventh Circuit law.

4.     The Debtors will offer the United States the opportunity to receive copies of documents they obtain through subpoena or other discovery.

5.     The Debtors will waive the pre-bankruptcy attorney client privilege between the Debtors and any particular attorney or law firm to expedite the United States' review of records in its criminal investigation of Christopher Delgado and others (the "**Fraud**").

6.     The Debtors will not challenge the United States' seizure or forfeiture of:

(a)     any asset owned by or titled in Christopher Delgado's name individually or jointly with others, or held by any corporate entities affiliated with Christopher Delgado, including but not limited to Habibi HQ LLC, Habibi Holdings LLC, and Goliath Ventures International, Inc.;

(b)     any asset purchased by Christopher Delgado and owned by or titled to his associates or family members;

(c)     any funds currently held by the United States;

2

(d)    any funds transferred to third parties by Christopher Delgado or the Debtors to the extent such funds are seized from other targets of, or witness in, the ongoing federal criminal investigation of the Fraud (for clarity and to avoid misunderstanding, the United States will identify these persons to the Debtors); or

(e)    any vehicles titled in the name of the Debtors.

7.    The United States will assume responsibility for seizing and forfeiting any digital asset of Christopher Delgado or the Debtors.

8.    The United States will periodically inform the Debtors of the specific assets seized or forfeited as well as the asserted owner of such assets.

9.    If, pursuant to Federal Rule of Criminal Procedure 6(e), the United States District Court for the Middle District of Florida so authorizes, the United States will provide a duplicate set of (1) any of the Debtors' books and records in its possession including electronic and paper records, (2) the Debtor's server, and (3) other records obtained in the criminal investigation of the Fraud (defined below) that relate to financial transactions involving funds of the Debtors; along with a document reflecting the chain of custody. The United States will seek this relief before the U.S. District Court as soon as practicable.

10.    The United States will not seek to seize or forfeit any causes of action that may exist under Chapter 5 of the United States Bankruptcy Code to avoid and recover avoidable transfers or transfers made by persons against whom the Debtors hold claims. For the avoidance of doubt, this does not alter the United States' right to seize or forfeit any particular tangible asset itself. The United States will not forfeit any equity ownership interest in the Debtors.

11.    Pursuant to 28 C.F.R., Part 9, the Debtors and the United States Attorney's Office, Middle District of Florida ("**USAO**") will seek approval from the U.S. Department of

3

4904-8399-7091, v. 1

Justice, Criminal Division, Money Laundering, Narcotics, and Forfeiture Section, to use the net proceeds from the sale of the forfeited assets ("**Forfeiture Proceeds**") to compensate victims of the Fraud as directed by and through the Bankruptcy Court, provided that no costs of the bankruptcy are deducted from such payments and the USAO concurs with the Debtors' victim list. The Debtors and the USAO agree that (1) claims of victims are to be allowed on a cash-on-cash basis without regard to unpaid promises of interest or fictitious profits and (2) investors criminally charged for their participation in the Goliath fraud or determined to be knowing participants in the fraud will not be recognized as victims. The Debtors and USAO agree to coordinate on the compilation of the victim list to the extent authorized by law to minimize any disagreement. The United States agreement as to this paragraph is conditioned upon the distribution of Forfeiture Proceeds being limited only to creditors who are investor victims.

12.     The United States and the Debtors recognize the possibility of circumstances arising and facts being learned during the course of the administration of the Bankruptcy Cases and the criminal investigation that may lead to a need to determine how to address certain claims, assets or particular situations as they arise. The Debtors and the United States will discuss in good faith how to address any such situation. In the unlikely event of a disagreement, the Bankruptcy Court will resolve the issue with a focus towards fulfilling the spirit and intent of this agreement and the consideration of the best interests of the victims of the Fraud.

13.     The Debtor shall promptly seek approval of this agreement from the Bankruptcy Court by filing a motion to approve the agreement pursuant to Federal Rule of Bankruptcy Procedure 9019.

14.     This agreement will bind any successor to the Debtors, including but not limited to any post-confirmation liquidating trust or trustee.

4

4904-8399-7091, v. 1

15. This agreement will be subject to the jurisdiction and enforcement of the Bankruptcy Court.

16. This agreement is subject to the approval of the Bankruptcy Court. The Debtors will undertake best efforts to obtain that approval as quickly as practicable.

Gregory W. Kehoe
United States Attorney

Dated 4/21/26

By _____
Hannah Watson
Assistant United States Attorney

Goliath Ventures, Inc. (FL) and
Goliath Ventures, Inc. (WY)

Dated 4/21/26

By Michael S. Budwick, as Receiver

5

4904-8399-7091, v. 1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                          Chapter 11

GOLIATH VENTURES INC. (FL),                     Case No. 26-13174-RAM
GOLIATH VENTURES INC. (WY),                     Case No. 26-13176-RAM
                                                Jointly Administered

      Debtors.

_____/

**ORDER GRANTING DEBTORS' MOTION FOR APPROVAL
OF COMPROMISE AND SETTLEMENT WITH THE
UNITED STATES OF AMERICA: THE COORDINATION AGREEMENT**

**THIS CAUSE** came before the Court upon the *Debtors' Motion for Approval of Compromise and Settlement with the United States of America: The Coordination Agreement* [Dkt. No. _____] ("***Motion***").[1] The Court, having reviewed the Motion and the Court file, it is

**ORDERED** as follows:

1.      The Motion is **GRANTED**.

---

[1] All capitalized terms not defined in this Order shall have the meaning ascribed to such term as set forth in the Motion.

1

**EXHIBIT B**

2.        The Coordination Agreement is **APPROVED** in its entirety.

3.        The Court retains jurisdiction to enforce or interpret this Order.

###

**Submitted By:**
Solomon B. Genet, Esquire
Florida Bar No. 617911
sgenet@melandbudwick.com
MELAND BUDWICK, P.A.
*Counsel for Debtors*
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 358-6363
Telefax: (305) 358-1221

**Copies Furnished To:**
Solomon B. Genet, Esquire, is directed to serve copies of this Order on all parties in interest and to file a Certificate of Service.

2

## Mailing Information for Case 26-13174-RAM

**Electronic Mail Notice List**

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- **Alexander E. Brody**    abrody@melandbudwick.com,
  ltannenbaum@melandbudwick.com;mrbnefs@yahoo.com;ltannenbaum@ecf.courtdrive.com;phornia@ecf.courtdrive.com
- **Elizabeth R. Brusa**    ebrusa@shumaker.com, mkulczycke@shumaker.com
- **Jonathan S. Feldman**    feldman@katiephang.com, service@katiephang.com
- **Solomon B Genet**    sgenet@melandbudwick.com,
  ltannenbaum@melandbudwick.com;mrbnefs@yahoo.com;sgenet@ecf.courtdrive.com;ltannenbaum@ecf.courtdrive.com;phornia@ecf.courtdrive.com
- **Office of the US Trustee**    USTPRegion21.MM.ECF@usdoj.gov
- **Steven D Schneiderman**    Steven.D.Schneiderman@usdoj.gov
- **Christian Somodevilla**    Christian.Somodevilla@usdoj.gov, shannon.patterson@usdoj.gov;bridgett.moore@usdoj.gov
- **Jeffrey R Sonn**    jsonn@sonnlaw.com

**EXHIBIT 1**

## MASTER SERVICE LIST PER LOCAL RULE 2002-1(H)

**U.S. Trustee:** *(Notice provided via NEF)*
Office of The United States Trustee
51 SW First Avenue, Room 1204
Miami, FL 33130

**Debtors-in-Possession:** *(via NEF)*
Goliath Ventures Inc.
c/o Michael S. Budwick, Receiver
200 South Biscayne Blvd., #3200
Miami, Florida 33131

**Debtor-in-Possession's Attorney:**
*(Notice provided via NEF)*
Solomon B. Genet, Esquire
Alexander E. Brody, Esquire
Meland Budwick, P.A.
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131

**Secured Creditors:**
Attn: BMW Financial Services
NA, LLC Department
AIS Portfolio Services, LLC
Account: XXXXXX0990
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118

Attn: BMW Financial Services
NA, LLC Department
AIS Portfolio Services, LLC
Account: XXXXXX4629
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118

**United States and its agencies:**
Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Anita M. Cream, AUSA
Chief, Asset Recovery Division
400 N Tampa St, Ste 200
Tampa, FL 33602
*Via email:* anita.cream@usdoj.gov

Hannah Watson, AUSA
35 SE 1st Avenue, Suite 300
Ocala, Florida 34471
*Via email:* hannah.watson@usdoj.gov

Jordan A. Cortez
Sean O'Neill
Alan Maza
Securities & Exchange Commission
Division of Enforcement
Miami Regional Office
801 Brickell Avenue, Suite 1950
Miami, Florida 33131
*Via email:* cortezjo@sec.gov
*Via email:* oneills@sec.gov
*Via email:* mazaa@sec.gov

**Joint Committee of Creditors:**
John D. Euliano Revocable Trust
c/o Jordan A. Shaw, Esq.
110 SE 6th Street, Suite 2900
Ft. Lauderdale, FL 33301
jshaw@shawlewenz.com
*Via US mail and email*

ECLYFE LLC
c/o Jordan A. Shaw, Esq.
110 SE 6th Street, Suite 2900
Ft. Lauderdale, FL 33301
jshaw@shawlewenz.com
*Via US mail and email*

Jerry Stanley 1022 Trust
311 Dolcetto Court
Lakeway, TX 78738
jerrystanley10@gmail.com
*Via US mail and email*

Jigisha Patel
12 Hidden Meadow Dr.
Scotch Plains, NJ 07076
jigishashah@yahoo.com
*Via US mail and email*

**EXHIBIT 2**

## MASTER SERVICE LIST PER LOCAL RULE 2002-1(H)

Michael Holguin & Co. Ltd.
81 Showcase Drive
Hannon, Ontario L0R-1P0
Mholguin12@hotmail.com
*Via US mail and email*

Gaurang Patel
45 Burniston Ct.
Hillsborough, NJ 08844
gaupatel79@gmail.com
*Via US mail and email*

Jay Kansal
4450 Leesburg Rd.
Marietta, GA 30066
drjaykansal@gmail.com
*Via US mail and email*

**Notice of Appearances:**
*(Notice provided via NEF*
*Upon Registered Users)*

*Attorneys for Todd Rideman*
Jonathan S. Feldman, Esq.
Phang & Feldman, PA
2 S. Biscayne Blvd., Ste 1600
Miami, FL 33131-1824

*Attorneys for Patrick Justin Renwald*
Elizabeth R. Brusa, Esq.
Shumaker, Loop & Kendrick, LLP
101 East Kennedy Blvd., Ste. 2800
Tampa, FL 33602

*Attorneys for United States of America, on*
*behalf of the Internal Revenue Service*
Christian Somodevilla, Esq.
99 N.E. 4th Street, Suite 300
Miami, FL 33132

*Attorneys for John Euliano*
Jeffrey R. Sonn, Esq.
Sonn Law Group P.A.
19495 Biscayne Blvd., Suite 607
Aventura, FL 33180